USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 9/21/2018

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

DALBIDO ANTONIO GIL CABRAL,

    Petitioner,

- against -

THOMAS DECKER et al.,

    Respondents.

---

18 Civ. 4823 (JGK)

OPINION AND ORDER

JOHN G. KOELTL, District Judge:

This case, a petition for habeas corpus under 28 U.S.C. § 2241, concerns whether a lawful permanent resident's prolonged mandatory detention under 8 U.S.C. § 1226(c), without a bond hearing, violates the Due Process Clause of the Fifth Amendment.

The petitioner, Dalbido Antonio Gil Cabral – a lawful permanent resident of this country – has been imprisoned without a bond hearing for over seven months. His next hearing is scheduled for mid-November, at which time he will have been detained for over nine months. He now brings this petition for a writ of habeas corpus against the respondents: Thomas Decker,[1] Kirstjen Nielsen,[2] and Jefferson B. Sessions[3] in their official

---

[1] Field Office Director, New York City Field Office, United States Immigration & Customs Enforcement.

[2] Secretary, United States Department of Homeland Security.

[3] Attorney General, United States Department of Justice.

1

capacities. He seeks an order requiring the respondents to provide a bond hearing.

For the following reasons, the petition for a writ of habeas corpus is **granted**. The respondents are ordered to provide a bond hearing or release the petitioner within **seven days** of this Order.

I.

Dalbido Antonio Gil Cabral is a 26-year-old lawful permanent resident of the United States. (Pet. ¶ 1.) He is from the Dominican Republic, but has lived in the United States since he was fourteen years old. (Id. ¶ 1.) His mother (a lawful permanent resident), sister (a United States citizen), brother (a lawful permanent resident), grandfather, and partner all live here as well. (See id. ¶ 21; Pet. Ex. A ¶ 3.) He is the father of one United States citizen child, and also serves a paternal role for his partner's three children, who are United States citizens. (Pet. ¶ 21; Pet. Ex. A ¶ 3.)

On January 22, 2018, the respondents transferred the petitioner to civil immigration detention. (Pet. ¶ 2.) He was sent to the Bergen County Jail in New Jersey, and removal proceedings were initiated against him at the Executive Office for Immigration Review. (Id. ¶ 26; Pet. Ex. B.) The respondents charged the petitioner as removable under 8 U.S.C. § 1226(c). Under § 1226(c), the Government must detain a

2

limited class of noncitizens without bond for the period of time while removal proceedings are pending. Certain crimes, known as "crimes of moral turpitude," can be the basis for detention under § 1226(c). Two crimes of moral turpitude are required if that is the basis for removal. Id. In this case, the Government initially claimed that two of the petitioner's prior convictions – attempted robbery and turnstile jumping – satisfied that requirement. (See Pet. Ex. B.) On February 22, 2018, the petitioner appeared at his first immigration hearing. (Pet. ¶ 28; Pet. Ex. A ¶¶ 4-5.) At that hearing, his case was adjourned to April 6, 2018. (Pet. ¶ 28; Pet. Ex. A ¶ 5.)

On March 23, 2018, the petitioner filed a motion to terminate the immigration proceedings. (Pet. ¶ 29.) He argued that a conviction for turnstile jumping was not a crime involving moral turpitude. (Id. ¶ 29; Pet. Ex. F.) The Department of Homeland Security ("DHS") later filed a written opposition, (Pet. ¶ 30), and the immigration judge adjourned the case until May 1, 2018, to consider the motion. (Id.) On April 13, 2018, DHS amended the petitioner's notice to appear to add an allegation that the petitioner was convicted of petit larceny – a misdemeanor. (Id. ¶ 31.)

At the May 1 hearing, the immigration judge declared that she would not make a formal ruling on the petitioner's motion to terminate because DHS had amended the notice to appear to

3

include another purported crime of moral turpitude: the conviction for petit larceny. (Id. ¶ 32.) That same day, the immigration judge held a Matter of Joseph hearing[4] to determine whether the petitioner was properly subject to detention under 8 U.S.C. § 1226(c). (Pet. ¶ 33; Pet. Ex. A ¶ 8.) The petitioner argued that DHS was substantially unlikely to prevail on its charge that the petitioner is deportable. (Pet. ¶ 33.) The immigration judge disagreed, holding the petitioner had not met his burden. (Id.) The judge then adjourned the case until May 31, 2018. (Id.)

On May 31, 2018, the immigration judge denied the petitioner's Amended Motion to Terminate Removal Proceedings. (Id. ¶ 34.) The immigration judge stated that she believed she was bound to conclude that a New York petit larceny conviction is a crime involving moral turpitude. (Id.) The judge then scheduled a merits hearing for adjudication of the petitioner's applications for relief from removal. (Id.) The judge set the hearing for August 7, 2018. (Id.)

At the August 7 merits hearing, the petitioner was allowed to present only one witness. (Aug. 8, 2018, Z. Jones Letter to

---

[4] At a Matter of Joseph hearing, a "detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention." Demore v. Kim, 538 U.S. 510, 514 (2003).

4

the Court, at 1, Dkt. No. 16.) The immigration court then continued the hearing to a date more than three months in the future: November 14, 2018. (Id.) At the November 14 hearing, the petitioner will have spent over nine months in custody without a bond hearing.

On September 14, 2018, the petitioner submitted a letter to notify the Court about a recently issued opinion from the Board of Immigration Appeals ("BIA"), Matter of J. M. Acosta, 27 I. & N. Dec. 420, 432 (B.I.A. 2018). (Sept. 14, 2018, Z. Jones Letter to the Court, Dkt. No. 21.) In that case, the BIA held that "a conviction does not achieve finality for immigration purposes until the time for filing an initial direct appeal has expired under the laws of the applicable jurisdiction." Matter of J. M. Acosta, 27 I. & N. Dec. 420, 432 (B.I.A. 2018). One of the two crimes that is purported to be a crime of moral turpitude committed by the plaintiff is currently on appeal. (Sept. 14, 2018, Z. Jones Letter to the Court, Dkt. No. 21.) The petitioner claims that this strengthens his arguments against removability but is likely to extend his already prolonged detention. (Id.)

**II.**

Congress has authorized federal district courts "to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United

5

States.'" Wang v. Ashcroft, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)). This includes claims by non-citizens challenging the constitutionality of their detention without bail. Demore v. Kim, 538 U.S. 510, 516-17 (2003).

Federal immigration law authorizes DHS to arrest and initially detain an alien who has entered the United States and is believed to be removable. 8 U.S.C. § 1226(a); see also Lora v. Shanahan, 804 F.3d 601, 608-09 (2d Cir. 2015), vacated 138 S. Ct. 1260 (2018). Certain classes of aliens are subject to mandatory detention and may not, under the text of § 1226(c), be released until the removal proceedings conclude.[5] Jennings v. Rodriguez, 138 S. Ct. 830, 837-38 (2018). For example, aliens who have committed certain crimes of "moral turpitude" are subject to mandatory detention. 8 U.S.C. §§ 1226(c), 1227(a)(2)(A)(ii) ("Any alien who at any time after admission is convicted of two or more crimes involving moral turpitude . . . is deportable.").

However, "there must be some procedural safeguard in place for immigrants detained for months without a hearing." Lora, 804 F.3d at 614; see also Demore, 538 U.S. at 513 (holding

---

[5] Under § 1226(c), "[t]he Attorney General shall take into custody any alien who . . . is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title." Under § 1227(a)(2)(A)(ii), "[a]ny alien who at any time after admission is convicted of two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct," is deportable.

6

Congress "may require that [noncitizens held under § 1226(c)] be detained for the <u>brief period</u> necessary for their removal proceedings" (emphasis added)). Thus, where there has been a prolonged mandatory detention of the aliens under 8 U.S.C. § 1226(c), without access to a bond hearing, federal courts have found that habeas petitioners' Fifth Amendment Due Process rights were violated. <u>See, e.g., Sajous v. Decker</u>, No. 18cv2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018); <u>see also</u> <u>Zadvydas v. Davis</u>, 533 U.S. 678, 682 (2001). In such cases, federal courts have the authority to order that the petitioners be released from detention unless they are provided with an individualized bond hearing. <u>Hernandez v. Decker</u>, No. 18cv5026, 2018 WL 3579108, at *8 (S.D.N.Y. July 25, 2018); <u>Frederic v. Edwards</u>, No. 18cv5540, Dkt. No. 13 (S.D.N.Y. July 19, 2018); <u>Sajous</u>, 2018 WL 2357266, at *5, *8.

### III.

The petitioner offers three arguments in support of his request for a bond hearing: first, that § 1226(c) does not apply to him because he has contested his deportability; second, that § 1226(c) is unconstitutional if read to apply to aliens who have contested their removability; and third, that he has been detained for an unreasonably long period of time without a bond hearing in violation of his Fifth Amendment Due Process

7

rights. Only the third argument is meritorious, but each is addressed below.

**A.**

The petitioner first argues 8 U.S.C. § 1226(c) – the mandatory detention statute – does not apply to him. He notes that the text of § 1226(c) only requires detention for an alien who "is deportable." (Pet. ¶¶ 60-61.) He claims that because he has contested his deportation, he does not qualify as a person who "is deportable." (Id.) The argument is without merit.

First, the plain text of § 1226 authorizes the government to detain an alien "pending a decision on whether the alien is to be removed from the United States." 8 U.S.C. § 1226(a) (emphasis added).

Second, in Jennings the Supreme Court noted that § 1226(c) provides for detention of an alien "until 'a decision on whether the alien is to be removed' is made." Jennings, 138 S. Ct. at 847 (emphasis added) (quoting 8 U.S.C. § 1226); see also Young v. Aviles, 99 F. Supp. 3d 443, 454 (S.D.N.Y. 2015) ("[T]he Supreme Court's decision in Demore all but forecloses the argument that the term 'is deportable,' as used in § 1226(c), means anything other than an alien who prima facie qualifies for removal." (quotation marks omitted)).

8

Finally, the petitioner's interpretation of § 1226(c) would drain the statute of any and all meaning. If an alien does not challenge his removal, then there is no basis for removal proceedings under § 1226(c); the alien would simply be ordered removed under a different statute. See 8 U.S.C. § 1231 (providing basis for detention after an alien is ordered removed).

Thus, the petitioner's challenge to his removability does not exempt him from § 1226(c).

**B.**

The petitioner also argues that § 1226(c) "raises serious constitutional concerns" as applied to aliens who challenge their removability. (Pet. ¶ 64.) This argument is also unavailing. The Supreme Court has repeatedly held that detention during removal proceedings is constitutional. Demore, 538 U.S. at 531 ("Detention during removal proceedings is a constitutionally permissible part of that process."); see also Jennings, 138 S. Ct. at 857 (Thomas, J., concurring) ("This Court has never held that detention during removal proceedings is unconstitutional. To the contrary, this Court has repeatedly recognized the constitutionality of that practice."); Reno v. Flores, 507 U.S. 292, 306 (1993) ("Congress has the authority to detain aliens suspected of entering the country illegally pending their deportation hearings.").

9

Thus, § 1226(c) is not facially unconstitutional when applied to aliens who have challenged their removability.

### C.

Finally, the petitioner argues that the length of his detention without a bond hearing, which will exceed nine months by his next court date, violates his right to due process. (Pet. ¶¶ 68-74.) He asserts two bases for this argument. First, he claims that any detention over six months pursuant to § 1226(c) is per se unconstitutional. (Id. ¶¶ 68-70.) Second, he asserts that even if the Court cannot draw a hard-and-fast due-process line at six months, the individual facts in this case show that his detention has violated his Fifth Amendment right to Due Process. (Id. ¶¶ 71-74.)

### 1.

The Court cannot adopt the six-month rule proposed by the petitioner. The Supreme Court rejected a six-month rule as a matter of statutory construction in Jennings, 138 S. Ct. at 847 ("Nothing in § 1226(a)'s text" requires "periodic bond hearings every six months."). The Court also vacated the decision by the Court of Appeals for the Second Circuit in Lora that had read such a requirement into § 1226(c). See Shanahan v. Lora, 138 S. Ct. 1260 (2018). While the Supreme Court left open the issue of what requirements are imposed by the Due Process Clause of the Fifth Amendment, Jennings, 138 S. Ct. at 851, it would be

10

inconsistent with the discussion of due process in Jennings to find a due process requirement of an automatic bond hearing after a detention of six months. Rather, the Supreme Court stressed the flexible nature of the Due Process Clause. Id. at 852.

**2.**

The Jennings decision left open the possibility that individual detentions without bond hearings might be so lengthy as to violate due process. In the wake of Jennings, courts in this District have applied the case-by-case approach to petitions for bail hearings. See Sajous v. Decker, No. 18cv2447, 2018 WL 2357266, at *1 (S.D.N.Y. May 23, 2018) ("[T]he Court concludes that whether mandatory detention under § 1226(c) has become 'unreasonable,' and thus a due process violation, must be decided using an as-applied, fact-based analysis." (citation omitted)); Vallejo v. Decker, No. 18cv5649, 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018) ("Ultimately, determining whether detention violates the Due Process Clause requires a fact-dependent inquiry that will vary depending on individual circumstances." (citation and quotation marks omitted)); Hernandez, No. 18cv5026, 2018 WL 3579108, at *8 (S.D.N.Y. July 25, 2018) (holding that, under "a fact-dependent inquiry, [the petitioner's] detention has become unreasonably prolonged"); Frederic v. Edwards, No. 18cv5540, Dkt. No. 13 (S.D.N.Y. July

11

19, 2018) (same); see also Faure v. Decker, No. 15cv5128, 2015 WL 6143801, at *1 (S.D.N.Y. Oct. 19, 2015) (holding, pre-Jennings, that detention violated the petitioner's Fifth Amendment rights without relying solely on a six-month cutoff); Gordon v. Shanahan, No. 15cv261, 2015 WL 1176706, at *5 (S.D.N.Y. Mar. 13, 2015) (same).

Under the case-by-case approach, courts examine each individual's detention circumstances to determine whether it has become "unreasonable or unjustified." Demore, 538 U.S. 510, 532 (Kennedy, J., concurring) ("[T]he Due Process Clause prohibits arbitrary deprivations of liberty[; thus] a lawful permanent resident alien . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified." (emphasis added)); Zadvydas, 533 U.S. at 684-86.

A number of factors bear on whether a detention has become unreasonable or unjustified. These factors include: (1) the length of time the petitioner has been detained; (2) the party responsible for the delay; (3) whether the petitioner has asserted defenses to removal; (4) whether the detention will exceed the time the petitioner spent in prison for the crime that made him removable; (5) whether the detention facility is meaningfully different from a penal institution for criminal detention; (6) the nature of the crimes committed by the

12

petitioner; and (7) whether the petitioner's detention is near conclusion. See, e.g., Sajous v. Decker, No. 18cv2447, 2018 WL 2357266, at *10-11 (S.D.N.Y. May 23, 2018); Vallejo v. Decker, No. 18cv5649, 2018 WL 3738947, at *3 (S.D.N.Y. Aug. 7, 2018); Hernandez v. Decker, No. 18cv5026, 2018 WL 3579108, at *7 (S.D.N.Y. July 25, 2018). In this case, the weight of these factors tilt in favor of the need for a bond hearing for the petitioner at this time.

First, the length of detention. The petitioner has already been detained for over seven months without a bond hearing. By his next hearing he will have been in detention for over nine months without any assurance that it will end at that time. (Aug. 8, 2018, Z. Jones Letter to the Court, at 1, Dkt. No. 16.) This length of time is within the range that this Court has found sufficient to show a due process violation. See Gordon, 2015 WL 1176706, at *3 (eight months); Faure, 2015 WL 6143801, at *1 (detention would exceed nine months by the petitioner's next hearing).

Second, the party responsible for the delay. It does not appear that the petitioner has unreasonably delayed the proceedings. During the course of his detention, the petitioner has attended four calendar hearings. (Respondents' Mem. at 22.) He has filed a motion to terminate, an application for relief from removal, and a supplemental motion to terminate. (See id.

13

at 22-23; Pet. ¶¶ 11-17.) But it does not appear that he ever requested a continuance or an adjournment. (See Respondents' Mem. at 22-23; Pet. ¶¶ 11-17.)

The most recent adjournment of the hearing from August 7, 2018, to November 14, 2018 – over three months – was occasioned because the immigration judge did not have sufficient time to hear all of the evidence on August 7. The respondents claim that the petitioner's continued detention is "the natural and foreseeable consequence of his own decision to avail himself of further process." (Respondents' Mem. at 23.) But the petitioner should not be penalized for using procedural remedies available to him. At the argument of this motion, both parties agreed that there has been no showing of dilatory conduct by either party. This factor weighs in favor of the petitioner.

Third, whether the petitioner has asserted defenses. The petitioner here has asserted several defenses to his removal, including asylum, withholding of removal, and relief under the Convention Against Torture. He also asserts that § 1226(c) does not apply because he has not committed crimes of moral turpitude. This factor weighs in the petitioner's favor.

Fourth, the time of detention as compared to the potential jail time for the underlying offense. The petitioner will have been in detention for over nine months at his next hearing date. (Aug. 8, 2018, Z. Jones Letter to the Court, at 1, Dkt. No. 16.)

The underlying offenses here are attempted robbery in the second degree and petit larceny. For these crimes, the petitioner received a nine-month sentence for the attempted robbery and "time served" – for an unspecified length of time – for the petit larceny. The length of time that the respondent was incarcerated for the underlying crimes is not so long that it suggests that it is clear that the defendant is a danger to the community or a risk of flight so that a bond hearing would be futile.

<u>Fifth</u>, the penal nature of the detention facility. The petitioner has in fact been detained by the immigration authorities in a criminal detention facility. (Pet. ¶ 35 ("Respondents have held Mr. Gil at the Bergen County Jail, in conditions identical to those of county jail inmates serving criminal sentences . . . .").) This factor favors the petitioner.

<u>Sixth</u>, the nature of the crimes the petitioner committed. The underlying offenses for detention here are attempted robbery and petit larceny. The petitioner has also been convicted of turnstile jumping, criminal possession of a controlled substance, criminal trespass, intent to obtain transportation without paying, criminal possession of a weapon, and disorderly conduct. (Respondents' Mem. at 2-3.) Based on his multiple convictions, this factor weighs in favor of the respondents.

Seventh, whether the petitioner's detention is near conclusion. The petitioner's next hearing is rescheduled for November 14, 2018. (Aug. 8, 2018, Z. Jones Letter to the Court, at 1, Dkt. No. 16.) There is no assurance that the hearing will be concluded at that time. This factor weighs in the petitioner's favor.

Based upon all of these factors, the petitioner's continuing detention without a bond hearing is unreasonable. Therefore, due process requires the petitioner's release or a bond hearing to determine if the petitioner is a danger to the community or a risk of flight.[6] Zadvydas, 533 U.S. at 690 ("Freedom from imprisonment–from government custody, detention, or other forms of physical restraint–lies at the heart of the liberty that [the Due Process Clause] protects."). The

---

[6] The petitioner argues that at the bond hearing the government should have the burden of proving, by clear and convincing evidence, that the petitioner is a danger to the community or risk of flight. The Supreme Court recently held that § 1226 itself does not require the government to carry the clear and convincing evidence burden. See Jennings, 138 S. Ct. at 847 ("Nothing in § 1226(a)'s text . . . even remotely supports the imposition of" the clear and convincing evidence standard). However, the Supreme Court left open the question of what the Constitution requires for aliens detained pursuant to § 1226(c). Id. at 851. In the wake of Jennings, a number of courts in this District have considered the issue and held that due process requires the government to carry the burden by clear and convincing evidence. See, e.g., Hernandez v. Decker, No. 18cv5026, 2018 WL 3579108, at *10-12 (S.D.N.Y. July 25, 2018); Sajous v. Decker, No. 18cv2447, 2018 WL 2357266, at *12 (S.D.N.Y. May 23, 2018). But the question of whether the petitioner's yet-to-happen bond hearing complies with due process is not before this Court. Indeed, the respondents might release the petitioner rather than provide a bond hearing. In any event, the Supreme Court in Jennings stressed that "[d]ue process is flexible[;] . . . it 'calls for such procedural protections as the particular situation demands.'" 138 S. Ct. at 852 (quoting Morrissey v. Brewer, 408 U.S. 471, 481 (1972)). Thus, the Court expresses no opinion on this issue.

16

respondents shall conduct such a bond hearing within **seven days** of the issue of this Opinion or otherwise release the petitioner.

## CONCLUSION

The Court has considered all of the arguments raised by the parties. To the extent not specifically addressed, the arguments are either moot or without merit.

**SO ORDERED.**

**Dated:** New York, New York
September 21, 2018

*/s/ John G. Koeltl*
**John G. Koeltl**
**United States District Judge**